MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District |
|---|---|
| Name (under which you were convicted): Cheryl D. Paluczak | Docket or Case No.: 14-3106-08-CR-S-MDH |
| Place of Confinement: FCI-Aliceville-Alabama | Prisoner No.: 42319-044 |
| UNITED STATES OF AMERICA    V. | Movant (include name under which convicted): Cheryl D. Paluczak |

## MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

    District of Missouri - Springfield, Missouri

    (b) Criminal docket or case number (if you know): 14-3106-08-CR-S-MDH

2. (a) Date of the judgment of conviction (if you know): May 18, 2017
   (b) Date of sentencing: May 18, 2017

3. Length of sentence: 132 Months

4. Nature of crime (all counts): 21:841(A)(1), 841(B)(1)(A) 846, 851 (Class A Felony) Conspiracy to Distribute 500 Grams or More of a mixture or substance containing a detectable amount of Methamphetamine (CT. 1)

5. (a) What was your plea? (Check one)
   (1) Not guilty ☐  (2) Guilty ☒  (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or what did you plead guilty to and what did you plead not guilty to?

   N/A

6. If you went to trial, what kind of trial did you have? (Check one) N/A   Jury ☐   Judge only ☐
7. Did you testify at a pretrial hearing, trial, or post-trial hearing? N/A   Yes ☐   No ☐
8. Did you appeal from the judgment of conviction?   Yes ☐   No ☒

9. If you did appeal, answer the following:
   (a) Name of court: _N/A_
   (b) Docket or case number (if you know): _____
   (c) Result: _____
   (d) Date of result (if you know): _____
   (e) Citation to the case (if you know): _N/A_
   (f) Grounds raised:

   (g) Did you file a petition for certiorari in the United States Supreme Court? Yes ☐ No ☒
       If "Yes," answer the following:
       (1) Docket or case number (if you know): _N/A_
       (2) Result: _____
       (3) Date of result (if you know): _____
       (4) Citation to the case (if you know): _____
       (5) Grounds raised: _N/A_

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
    Yes ☐  No ☒

11. If your answer to Question 10 was "Yes," give the following information:
    (a) (1) Name of court: _N/A_
        (2) Docket or case number (if you know): _____
        (3) Date of filing (if you know): _____
        (4) Nature of the proceeding: _N/A_
        (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your motion, petition, or application?
        Yes ☐    No ☒
    (7) Result: _N/A_
    (8) Date of result (if you know):
(b) If you filed any second motion, petition, or application, give the same information:
    (1) Name of court:
    (2) Docket of case number (if you know):
    (3) Date of filing (if you know):
    (4) Nature of the proceeding: _N/A_
    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your motion, petition, or application?
        Yes ☐    No ☒
    (7) Result:
    (8) Date of result (if you know): _N/A_
(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?
    (1) First petition:    Yes ☐    No ☒
    (2) Second petition:    Yes ☐    No ☒
(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:
_Ineffective Assistance of Counsel Wasn't Aware of All My Options_

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

GROUND ONE: _Defendant's 4th Amendment Rights were violated by the government's illegal cellular tower/wireless carrier search._

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Attached Memorandum.

(b) **Direct Appeal of Ground One:**
   (1) If you appealed from the judgment of conviction, did you raise this issue?
       Yes ☐   No ☒
   (2) If you did not raise this issue in your direct appeal, explain why:
       _New Supreme Court Case Law under Carpenter dated June 22, 2018_

(c) **Post-Conviction Proceedings:**
   (1) Did you raise this issue in any post-conviction motion, petition, or application?
       Yes ☐   No ☒
   (2) If you answer to Question (c)(1) is "Yes," state:
   Type of motion or petition: _N/A_
   Name and location of the court where the motion or petition was filed:

   Docket or case number (if you know):
   Date of the court's decision:
   Result (attach a copy of the court's opinion or order, if available):
   _N/A_

   (3) Did you receive a hearing on your motion, petition, or application?
       Yes ☐   No ☒
   (4) Did you appeal from the denial of your motion, petition, or application?
       Yes ☐   No ☒
   (5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
       Yes ☐   No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: N/A

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available): N/A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: New Supreme Court Case Law Carpenter dated June 22, 2018

GROUND TWO: Defendant's Attorney was Ineffective for failing to object to the incorrect total of Criminal History Points.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): See Attached Memorandum.

(b) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐    No ☒

(2) If you did not raise this issue in your direct appeal, explain why: Wasn't Aware it was an Option. Ineffective Assistance of Counsel

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?
Yes ☐    No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _N/A_

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available): _N/A_

(3) Did you receive a hearing on your motion, petition, or application?
    Yes ☐   No ☒

(4) Did you appeal from the denial of your motion, petition, or application?
    Yes ☐   No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
    Yes ☐   No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _N/A_

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _Ineffective Assistance of Counsel Wasn't Aware of My Legal Options_

**GROUND THREE:** _Defendant's Methamphetamine Should have been Calculated as a mixture of Methampletamine_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_See Attached Memorandum_

**(b) Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐  No ☒

(2) If you did not raise this issue in your direct appeal, explain why:
New Case Law out of 8th Circuit of Iowa

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?
Yes ☐  No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: N/A

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):
Date of the court's decision: N/A
Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?
Yes ☐  No ☒

(4) Did you appeal from the denial of your motion, petition, or application?
Yes ☐  No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
Yes ☐  No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: N/A

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: New Case Law out of 8th Circuit of Iowa

**GROUND FOUR:** N/A

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Four:**
  (1) If you appealed from the judgment of conviction, did you raise this issue?
      Yes ☐　　No ☒
  (2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**
  (1) Did you raise this issue in any post-conviction motion, petition, or application?
      Yes ☐　　No ☒

  (2) If you answer to Question (c)(1) is "Yes," state:
  Type of motion or petition:
  Name and location of the court where the motion or petition was filed:

  Docket or case number (if you know): N/A
  Date of the court's decision:
  Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?
Yes ☐   No ☒

(4) Did you appeal from the denial of your motion, petition, or application?
Yes ☐   No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
Yes ☐   No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: N/A

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: N/A


13. Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

1- Actual Methamphetamine v. Mixture.
2- 4th Amendment violation new Supreme Court Case Law


14. Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the you are challenging?   Yes ☐   No ☒
If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.   N/A

15. Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

   (a) At the preliminary hearing: Marsha Jackson

   (b) At the arraignment and plea: Marsha Jackson

   (c) At the trial: N/A

   (d) At sentencing: Marsha Jackson

   (e) On appeal: N/A

   (f) In any post-conviction proceeding: N/A

   (g) On appeal from any ruling against you in a post-conviction proceeding: N/A

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?  Yes ☐  No ☒

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?  Yes ☐  No ☒

   (a) If so, give name and location of court that imposed the other sentence you will serve in the future:

   (b) Give the date the other sentence was imposed:
   (c) Give the length of the other sentence:
   (d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?  Yes ☐  No ☒

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

   New Supreme Court Case Law

Therefore, movant asks that the Court grant the following relief:

<u>Expedited evidentiary hearing on issues and sentence reduction.</u>

or any other relief to which movant may be entitled.

X _____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on ____8/26/18____
(month, date, year)

Executed (signed) on ____8/26/18____ (date)

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —
  (1) the date on which the judgment of conviction became final;
  (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
  (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
  (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

# INEFFECTIVENESS OF COUNSEL CLAIM

In order to succeed on the claim of ineffective assistance of counsel, the defendant must successfully satisfy each part of the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). The defendant must show both that her counsel was deficient and that the defendant was prejudiced because of the deficiencies. Hanson v. Sherrod, 797 F.3d 810, 826 (2015) "Counsel's performance must be 'completely unreasonable' to be constitutionally ineffective, not 'merely wrong.'" (Id, quoting Wilson v. Sirmons, 536 F.3d 1064, 2083 (10th Cir.2008).

In Rogers v. United States, 91 F.3d1388 (10th Cir. 1996), the Tenth Circuit discussed the requirements of an ineffective assistance of counsel claim under Section 2255. The Rogers court stated: Repentance born of a failed trial or sentencing strategy can often be turned against defense counsel. We recognize that such criticism is often converted into a challenge asserting inadequate assistance. Thus, we look for genuine-rather than perceived-ineffectiveness of counsel. Under Strickland we first examine whether "'counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" [United States v. Kissick, 69 F.3d 1048, 1054 (10th Cir. 1995)] (quoting Strickland, 466 U.S. at 687, 104 S.Ct at 2064). "[A] defendant is entitled to the exercise [of] the skill, judgment and diligence of a reasonably competent defense attorney." Id. (quotation and citation omitted.). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689, 104 S.Ct at 2065.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption, that under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.CT. 158, 164, 100 L. Ed. 83 (1955)).

Under the prejudice aspect of Strickland we inquire whether "'there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.'" Kissick, 69 F.3d at 1055 (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. "However, a court may not set aside a conviction or a sentence solely because the outcome would have been different absent counsel's deficient performance." Kissick 69 F.3d at 1055. "Instead, in order to establish the required prejudice, a defendant must demonstrate that counsel's performance rendered the proceeding 'fundamentally unfair or unreliable (quoting Lockhart v. Fret well U.S 364, 368-370, 113 S. Ct. 838, 842-843, 122 L. Ed 2d 180 (1993). Id at 1391-1392.

A court need not determine whether trial counsel's performance was deficient examining whether the defendant established the requisite showing under the second prong requiring prejudice. Jones, 852 F.2d 1275, 1277 (10th Cir. 1988). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." United States v. Taylor, 832 F.2d 1187, 1194-1195 (10th Cir. 1987). The Supreme Court recognizes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; See also United States v. Rantz, 862 F.2nd 808, 810 (10th Cir. 1988). As the second element of the Strickland test, the Court must focus on the question "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceedings fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

Here the proceedings were fundamentally unfair to defendant due to ineffective assistance of counsel.

1

DEFENDANT SHOULD HAVE BEEN CHARGED WITH A MIXTURE OF METHAMPHETAMINE RATHER THAN AN ACTUAL (ICE) METHAMPHETAMINE

The information was regarding Refusal to Follow Actual (and ICE) methamphetamine guideline based on policy disagreement.

Two judges in Northern District of Iowa recently have announced that they disagree with on policy grounds, and no longer will follow, the marijuana equivalency called for in the sentencing guidelines when imposing sentences in cases involving actual methamphetamine and ice.

The Sentencing Guidelines distinguish between a methamphetamine mixture and actual/pure methamphetamine or ice, which it defines as a methamphetamine that is at least 80% pure, treating actual/pure methamphetamine or ice ten times more harshly than a mixture of marijuana. One gram of actual (pure methamphetamine or ice has a marijuana equivalency of 20 kilograms whereas one gram of methamphetamine mixture has an equivalency of 2 kilograms. The ratio has its roots in 21 U.S.C. 841(b)(1). Comment 27(c) to U.S.S.G. Section 2D1.1 offers the only explanation of the Commission's view on the relevance of purity to the appropriate sentence, asserting that purity "is probative of the defendant's role or position in the chain of distribution" and that "since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution. The fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs."

As Chief Judge Leonard T. Strand and District Judge Mark W. Bennett explain in United States v. Harry and United States v. savanna, respectively, there is no empirical basis for the 10-1 ratio and, because nearly all methamphetamine trafficked is substantially pure, purity is not an accurate proxy for culpability and it makes little sense to enhance virtually all methamphetamine defendant's sentences on the basis of purity. Both judges indicated that therefore will apply only the 2 kilogram marijuana equivalency even in cases involving actual/pure methamphetamine or ice.

This theory does make since if you look at the very minor role the movant played and a sentence of 70 months would appear to be more appropriate given the nature of the crime and limited involvement of the movant. Seventy months would be a sentence that is sufficient but not greater than necessary.

WHEREFORE, Movant requests this court to amend her current 2255 Motion on file to also reflect the information provided above.

1

DEFENDANT'S ATTORNEY WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE INCORRECT NUMBER OF CRIMINAL HISTORY POINTS IN HER CASE

The movant in this case had the following criminal history:

3-9-04   FAILURE TO APPEAR   3 POINTS
12-8-02  TRAFFICKING         3 POINTS - SHOULD BE 1 POINT DUE TO PRIOR OFFENSE WHEN ALL RAN CONCURRENT
         CHILD ENDANGERMENT
10-13-02 POSSESSION          3 POINTS- SHOULD BE 1 POINT DUE TO PRIOR OFFENSE WHEN ALL RAN CONCURRENT

The defendant was sentenced to 22 years for all 3-charges above were all ran concurrent and defendant did a total of 7 years of incarceration in total. Case was complete when defendant received this federal charge.

CRIMINAL HISTORY CATEGORY AND DEFINITIONS AND INSTRUCTIONS FOR COMPUTING CRIMINAL HISTORY SECTION USSR AND 4A1.2

From the Sentencing Guidelines Manual: For example, a defendant's criminal history includes two robbery convictions for offenses committed on different occasions. The sentences for these offenses were imposed on the same day and are counted as a single prior sentence... If the defendant received a five-year sentence of imprisonment for one robbery and a four-year sentence of imprisonment for the other robbery (consecutively or concurrently), a total of 3 points is added under (a). An additional point is added under (e) because the sentence did not result in any additional point(s) (under (a), (b, (c)).

\*\*\*Since defendant's charges on 3-9-04, 12-8-02, and 10-13-02 were all ran concurrent only 3 points should have been counted towards defendant's criminal history under 4A1.1. The defendant was incorrectly pointed 4 additional criminal history points on her presentencing report.

The term "prior sentence" means any sentence previously imposed upon adjudication of guilt by whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense. "Prior sentence" means a sentence imposed prior to sentencing on the instant offense, other that a sentence for conduct that is part of the instant offense. A sentence imposes after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct that was part of the instant offense. Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense.

2. If the defendant has multiple prior sentences, determining whether those sentences are counted separately, or as a single sentence. Prior sentences always are counted separately if the sentences are imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

For purposes of applying (a), (b), and (c), if prior sentences are counted as a single sentence, use the longest sentence of imprisonment if concurrent sentences were imposed. If consecutive sentences were imposed, use the aggregate sentence of imprisonment.

3) "Sentence of Incarceration" refers to the maximum imposed sentence. If part of a sentence of imprisonment was suspended, "sentence of imprisonment" refers only to the portion that was not suspended. To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence (or, if the defendant escaped, would have to serve time). For the purposes of applying (a), (b), or (c), the length of a sentence of imprisonment is stated maximum. That is, criminal history points are based on the sentence pronounced, not the length of time actually served. A sentence of probation is to be treated as a sentence under (c) unless a condition of probation requires imprisonment for at least 60 days.

When the charges are ran concurrent into one sentence the other charges are to be counted only as prior sentence points of 1 each not 3.

Therefore since the defendants criminal history points are incorrect by at least 4 criminal history point the court should give her an expedited evidentiary hearing and reduce her sentence accordingly. Because this shows under Strickland that the Attorney wad deficient and the movant was prejudice by the job he completed in her case along with the new reasoning regarding actual methamphetamine out of the 8th district the defendant is entitled to review.

DEFENDANT'S FOURTH AMENDMENT RIGHTS WERE VIOLATED WHEN THE GOVERNMENT AND ITS AGENTS USED ILLEGAL WARRANTS VIOLATING HER PRIVACY WHEN THEY DID NOT GET A WARRANT FROM HER WIRELESS CARRIER TO OBTAIN CELLULAR INFORMATION FROM THE DEFENDANT

On June 22, 2018, the Supreme Court issued its decision in Carpenter v. United States, No. 16-402. Cell phones perform their wide and growing variety of functions by continuously connecting a set of radio antennas called "cell sites." Each time a phone connects to a cell site, it generates a time-stamped record known as a cell-site location information (CSLI). Wireless carriers collect and store this information for their own business purposes. Here, after the FBI identified the cell phone numbers of several robbery suspects, prosecutors were granted court orders to obtain the suspects' cell phone records under the Stored Communications Act. Wireless carriers produced CSLI for petitioner Timothy Carpenter's phone, and the Government was able to obtain 12,898 location points cataloging Carpenter's movements over 127 days an average of 101 data points per day. Carpenter moved to suppress the data, arguing that Government's seizure of the records without obtaining a warrant supported by probable cause violated the Fourth Amendment. The District Court denied the motion, and prosecutors used the records at trial to show that Carpenter's phone was near four of the robbery locations at the time those robberies occurred. Carpenter was convicted. The Six Circuit affirmed, holding that Carpenter lacked a reasonable expectation of privacy in the location information collected by the FBI because he had shared that information with his wireless carriers.

Held:

The Government's acquisition of Carpenter's cell site records was a Fourth Amendment search.

(a) The Fourth Amendment protects not only property interests but certain expectations of privacy as well. Katz v. United States, 389 U.S. 347, 351. Thus, when an individual "seeks to preserve something as private," and his expectation of privacy is "one that society is prepared to recognize as reasonable," official intrusion into that sphere generally qualifies as a search and requires a warrant supported by probable cause. Smith v. Maryland, 442 U.S. 735, 740 (internal quotation marks and alterations omitted). The analysis regarding which expectations of privacy are entitled to protection is informed by historical understandings "of what was deemed an unreasonable search and seizure when [the Fourth Amendment] was adopted." Carroll v. United States, 267 U.S. 132. These Founding-era understandings continue to inform this Court when applying the Fourth Amendment to innovations in surveillance tools. See, e.g., Kyllo v. United States, 533 U.S. 27. Pp47.

(b) The digital data at issue personal location information maintained by a third party does not fit neatly under existing precedents but lies at the intersection of two lines of cases. One set addresses a person's expectation of privacy in his physical location and movements. See, e.g., United States v. Jones, 565 U.S. 400 (five Justices concluding that privacy concerns would be raised by GPS tracking). The other addresses a person's expectation of privacy in information voluntarily turned over to third parties.

(c) Tracking a person's past movements through CSLI partakes of many of the qualities of GPS monitoring considered in Jones it is detailed, encyclopedic, and effortlessly compiled. At the same time, however, the fact that the individual continuously reveals his location to his wireless carrier implicates the third-party principle of Smith and Miller.

A majority of the Court has already recognized that individuals have a reasonable expectation of privacy in the whole of their physical movements. Allowing government access to cell-site records which "hold many Americans the 'privacies of life,'" Riley v. California, 573 U.S. ___, ___ contravenes the expectation. In fact, historical cell-site records present even greater privacy concerns than the GPS monitoring considered in Jones: They give the Government near perfect surveillance and allow it to travel back in time to retrace a person's whereabouts, subject only to the five-year retention policies of most wireless carriers. The government contends that CSLI data is less precise than GPS information, but it thought the data accurate enough here to highlight it during closing argument in Carpenter's trial. At any rate, the rule the Court adopts "must take account of more sophisticated systems that are already in use or in development," Kyllo, 533 U.S.,at 36, and the accuracy of CSLI is rapidly approaching GPS-level precision. Pp. 12 15.

The second rationale for the third-party doctrine voluntary exposure does not hold up when it come to CSLI. Cell phone location information is not truly "shared" as the term is normally understood. First, cell phones and the services they provide are "such a pervasive and insistent part of daily life" that carrying one is indispensable to participation in modern society. Riley, 573 U.S. at

_____. Second, a cell phone logs a cell-site record by dint of its operation, without any affirmative act on the user's part beyond powering up. PP. 15 17.

The Government did not obtain a warrant supported by probable cause before acquiring Carpenter's cell-site records. It acquired those records pursuant to court order under the Stored Communications Act, which required the Government to show "reasonable grounds" for believing that the records were "relevant and material to an ongoing investigation." 18 U.S.C. 2703(d). That showing falls well short of the probable cause required for a warrant.

The government and or its agents did not obtain a warrant from the wireless carrier for Cheryl Paluczak or her co-defendants they only went after a warrant under the Stored Communications Act and is now considered a violation of Defendant's privacy rights under search and seizure of the 4th Amendment.

Defendant and her co-defendant's fourth amendment rights were violated because the government and its agents only obtained a warrant from the court under the Stored Communication act. The government and its agents never got a warrant from defendant's cellular carrier or that of her co-defendant's for which she has privacy rights. The showing that the government gave to the court to get the warrant falls short of the probable cause required for a warrant when it violates the rights of a third party such as a wireless carrier. Also defendant's fourth amendment rights of search and seizure are violated because the cell phone carriers private information was used not only to locate the defendant and her co-defendants but to also use the information to charge the defendant in this case using information obtained illegally from her co-defendant's cellular phone information.

Since defendant's Fourth Amendment Rights were violated like those of Carpenter above she is entitled to an expedited evidentiary hearing on the issues to prove up that her rights were violated.

42319-044
Cheryl Paluszak
Po.Box 4000
Federal Correctional
Institutional Aliceville
Aliceville, AL 35442
United States

RECD SEP - 5 2018

42319-044
Us Courthouse
222 N JOHN Q Hammons PKWY
Springfield, MO 65806
United States